IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KENNETH BARKER,

    Plaintiff,

  v.

KENNETH I. CHENAULT and AMERICAN EXPRESS COMPANY,

    Defendants.

No. C 16-05647 WHA

**ORDER GRANTING MOTION TO DISMISS**

## INTRODUCTION

In this pro se action arising out of a fraudulent credit card scheme, the individual defendant moves to dismiss pursuant to Rule 12(b)(6). For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

Pro se plaintiff Kenneth Barker opened an American Express Platinum credit card account with defendant American Express Company in May 2016. Barker signed up for this account based on the representation that he would receive one hundred thousand membership rewards program points if he spent three thousand dollars within three months of opening the account. This representation became part of a fraudulent and deceitful scheme "to obtain new credit card accounts based upon intentional misrepresentation, deception, and deceit" (Compl. ¶ 9).

Barker spent $3,694.12 in the requisite three-month period. This balance was made up of retail purchases, a gift card, and the membership fee for the credit card. He paid this balance on schedule with no penalties and received the promised one hundred thousand points in July 2016.

In August 2016, Barker received a letter from the account services department within American Express notifying him that they were removing the one hundred thousand points after noticing "point accrual redemption activity on [Barker's] account that indicate[d] an effort to obtain and use points in a manner that [was] not appropriate." The letter cited the membership rewards program's terms and conditions that stated (Compl., Exh. 2):

> [I]f you attempt to use or obtain points in a fraudulent way, we may:
> 
> - Take away all points in your program account,
> - Cancel your program account, or
> - Cancel any of your American Express Cards

Barker attempted to resolve the matter over the phone soon after receiving the letter. In his phone conversation, he "learned for the first time" that American Express was unable to support its conclusions that he inappropriately and fraudulently accrued membership points.

Subsequently, "Defendant" reported that Barker committed credit card fraud to "industry wide credit bureaus" knowing these reports were false and damaging (Compl. ¶ 11). It is unclear who Barker is referring to throughout the complaint when he uses "Defendant's" and "Defendant." This order quotes the form used in the complaint in reciting Barker's factual allegations. To support the allegation that "Defendant" made reports to credit bureaus, Barker cites his account statement that read (Compl., Exh. 1 at 3):

> **Credit Reporting**: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

Three days after receiving the August 2016 letter and following his fruitless phone conversation, Barker sent a claim letter to American Express's "Executive Offices" and "Secretary Office" (Compl., Exh. 3 at 1). He claimed the conclusions in the August 2016 letter were false, derogatory, and defamatory and demanded American Express (1) rescind, void, and cancel the August 2016 letter; (2) restore the removed points; (3) "expunge any record of alleged fraud, and the other hurtful and derogatory assertions that are set forth in the" August 2016 letter, his credit records, and all other records on which the information is recorded or stored; (4) and apologize to him in writing for the "arbitrary and capricious claims of fraud and malfeasance" (Compl., Exh. 3).

Barker did not receive a response before filing his complaint. "Defendant's" fraudulent inducement, false conclusions, and "arrogant refusal" to respond to his claim letter caused him "grave emotional distress, and very severe turpitude, in the form of nervousness, anxiety, worry, indignity, insomnia, sleeplessness, and recurrence of kidney stones" (Compl. ¶ 13).

Barker filed this action in October 2016, alleging six claims for relief against American Express and its chief executive officer and chairman, Kenneth Chenault: (1) fraud in the inducement, (2) fraud, (3) defamation, (4) damage to plaintiff's credit rating, (5) intentional infliction of emotional distress, and (6) "defendant's false claims and conclusions place plaintiff's conduct in a false light." The third through sixth claims for relief are based on the false statements made in the August 2016 letter and claim damages in excess of one million dollars.

American Express responded to Barker's claim letter from September 2016 on the same day he filed his complaint. Their response notified Barker that their decision remained the same (Pl.'s Opp., Exh. 3).

In January 2017, American Express answered the complaint and Chenault now moves to dismiss all of Barker's claims against him for failure to sufficiently state a claim against him individually. This order follows full briefing. Barker failed to appear for the hearing on this motion. This Court waited forty minutes and called the motion once again. Barker was still absent. Counsel for Chenault appeared at oral argument and was heard.

**ANALYSIS**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 55 U.S. 662, 669 (2009). Barker must plead sufficient facts to create a plausible inference that he is entitled to relief for all of his claims against each defendant. "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008).

Chenault argues that Barker has not and cannot plead facts to support holding Chenault personally liable, as CEO, for American Express's misconduct.

3

In California, "[d]irectors and officers of corporations are not rendered personally liable for its torts merely because of their official positions, but they may be liable if they directly ordered, authorized or participated in the tortious conduct." *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 785 (1979).

Barker's complaint advances no well-pled allegations that Chenault directly ordered, authorized, or participated in the one hundred thousand point promotion, nor that Chenault knew it to be a ploy that would not be honored. The complaint also lacks any well-pled allegation that Chenault directly ordered, authorized, or participated in the misrepresentations in the August 2016 letter — a letter signed "American Express Account Services." Indeed, it is implausible based on these allegations that Chenault would have even seen the letter before it was sent to Barker.

Barker's current complaint thus fails to allege sufficient facts to plausibly infer Barker is entitled to relief against Chenault personally. Chenault's motion to dismiss is **GRANTED**.

Barker's opposition argues Chenault generally authorizes and is ultimately responsible for every action of American Express, by virtue of his CEO position. He claims that Chenault, as CEO and chairman of American Express, has a duty to ensure every act on behalf of American Express is in accord with "our Constitution, Laws, and the Covenant of Good Faith a [sic] Fair Dealing" (Pl.'s Opp. at 9–10). Violation of this duty, "by either deliberate ignorance of the facts, and/or by his willful blindness to deliberately remain ignorant," results in personal liability for Chenault, according to Barker (*id.* at 10). This theory fails to assert that Chenault directly ordered, authorized, or participated in the alleged misconduct.

Barker's opposition also calls for "piercing the corporate veil" to find claims of relief against Chenault individually. In California, two conditions must be met before the corporate entity is disregarded: (1) there must be such a unity of interest and ownership between the corporation and the individual that their separateness no longer exists; and (2) if the acts are treated as those of the corporation alone, an inequitable result will follow. *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300 (1985). Factors used for establishing the first prong include the commingling of assets, sole ownership of all the stock in a corporation by one individual, the use of the same office

4

location, employment of the same employees, and undercapitalization of the corporation. *Associated Vendors, Inc. v. Oakland Meat Co, Inc.*, 210 Cal. App. 2d 825, 838–41 (1962).

Barker's allegations are insufficient to support either prong. Barker asserts Chenault and American Express are no longer separate entities because Chenault's compensation (which includes significant stock options) and the profitability of American Express are tied together (Pl.'s Opp. at 11). Barker describes the situation of many corporate officers, and even ordinary corporate employees, all over the country. This does not reach the level of unified interest contemplated by the law. Indeed, Barker does not allege facts to support any of the factors considered under this prong and it is implausible that he could.

Barker fails on the second prong, too. He has not made any allegations that *his* rights will be defeated by pursuing American Express alone for the wrongs it allegedly committed. He merely alleges that Chenault will evade personal liability. That is not the right inquiry. Barker should keep this in mind when he amends his complaint.

Relatedly, Chenault argues no plausible inference can be made of Barker's entitlement to relief against Chenault individually because Barker created significant confusion using the singular possessive form of defendant, i.e., Defendant's. Throughout the complaint, it is unclear whether Barker meant to refer to both defendants or just one. Barker never alleges Chenault committed any misconduct separately. He does, however, refer specifically to American Express on a few occasions — most notably, when alleging *American Express* sent the August 2016 letter with the false statements that underlie five of Barker's six claims.

In his opposition, Barker maintains his singular use referred to by defendants. Barker claims the entire complaint set forth specific factual allegations of both defendants' misconduct and that the claims for relief identified both as the wrongdoers. Neither of these arguments is supported by what the complaint actually says. He also quotes the introduction to the complaint that says he is suing Chenault and American Express "jointly and severally" for all six claims for relief. This

5

statement confuses the pleading standard. Simply alleging claims for relief is not enough, there must be alleged facts to support them.[*]

Barker's failure to adequately allege personal liability, while failing to make any allegations against Chenault individually are sufficient to **GRANT** this motion.

It is unnecessary to reach the further shortfalls in Barker's pleadings. Plaintiff should be mindful, however, of Chenault's remaining objections in the event he decides to amend his complaint to cure the above deficiencies.

## CONCLUSION

For the reasons stated above, defendant Chenault's motion to dismiss is **GRANTED**.

Barker may seek leave to amend the dismissed claims by a formal motion noticed on the normal 35-day calendar by **MARCH 23 AT NOON**. Barker must plead his best case. His motion should affirmatively demonstrate how the proposed first amended complaint corrects the deficiencies identified in this order, as well as any others raised in Chenault's motion but not addressed herein. The motion should be accompanied by a redlined copy. Chenault must raise any Rule 12 issues in response to Barker's motion. Failure to timely file a motion seeking leave to amend will result in dismissal of the action against Chenault.

**IT IS SO ORDERED.**

Dated: March 13, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[*] In amending the complaint, Barker should be sure to use the plural possessive, Defendants', when asserting something belongs to both defendants (e.g., "defendants' representations" or "defendants' misconduct") and the standard plural form without an apostrophe, i.e., Defendants, when referring to actions carried out by both defendants.