READE A. BRAMER (SBN: 294016)
rbramer@shb.com
SHOOK, HARDY & BACON, LLP
One Montgomery, Suite 2700
San Francisco, CA 94104
Tel:      (415) 544-1900
Fax:      (415) 391-0281

Attorneys for Defendant
AMERICAN EXPRESS COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KENNETH BARKER, | Case No. 3:16-cv-05647-WHA |
| Plaintiffs, | |
| v. | **AMERICAN EXPRESS COMPANY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS** |
| AMERICAN EXPRESS COMPANY, | |
| Defendant. | Date:  August 31, 2017<br>Time: 8:00 a.m.<br>Courtroom: 8, 19th Floor |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that on August 31, 2017, at 8:00 a.m. or as soon thereafter as the parties may be heard, in Courtroom 8, 19th Floor of the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant American Express Company ("Defendant" or "AEC") will, and hereby does, move this Court pursuant to Fed. R. Civ. P. 56 for an Order granting summary judgment in favor of AEC on Plaintiff's claims. AEC's request is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in Support thereof; the Declarations of Reade A. Bramer, Brandon Egan, Linda Presti, and Alejandro Rodriguez, and supporting evidence; and such argument as may be presented to the Court at the time of the hearing.

WHEREFORE, AEC respectfully requests that this Court enter an Order granting summary judgment in AEC's favor on all the claims asserted by Plaintiff.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.      Plaintiff Was Not Damaged By the Conduct Alleged. ............................................ 4

II.     Plaintiff Cannot Show that AEC Took any Actions with Regards to his Platinum
        Charge Card ............................................................................................................. 5

III.    Cause of Action Four is not an Independent Cause of Action................................. 8

IV.     AEC is entitled to Summary Judgment in its Favor on Plaintiff's Fraud Claims
        Because Plaintiff Cannot show Intent, and Cannot have Justifiably Relied on any
        Alleged False Representations ................................................................................. 9

        A.      Plaintiff concedes AEC did not Intend to Break its Promise................................. 9

        B.      Plaintiff Cannot Reasonably Rely on a Representation he Believed was False ... 10

V.      Plaintiff Cannot Show any Publication Sufficient to Prove Defamation, False Light...... 13

VI.     Plaintiff Cannot Prove Intent or Outrageous Conduct ...................................... 17

CONCLUSION.................................................................................................................... 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................................3

*Campanelli v. Regents of University of California*
44 Cal.App.4th 572, 51 Cal.Rptr.2d 891 (1996).........................................................14

*Carvalho v. Equifax Information Services, LLC*
629 F.3d 876 (9th Cir. 2010) ...........................................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................................3

*Christensen v. Superior Court*
54 Cal.3d 868, 830 P.2d 181, 2 Cal.Rptr.2d 79 (1991) .............................................18

*Conrad v. Bank of America*
45 Cal.App.4th 133, 53 Cal.Rptr.2d 336 (1996)...........................................................9

*Eisenberg v. Alameda Newspapers, Inc.*
74 Cal.App.4th 1359, 88 Cal.Rptr.2d 802 (1999)......................................................14

*Engalla v. Permanente Medical Group, Inc.*
15 Cal.4th 951, 938 P.2d 903, 64 Cal.Rptr.2d 843 (1997) .........................................9

*Fletcher v. Western National Life Ins. Co.*
10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970)...............................................................20

*Gill v. Hughes*,
227 Cal.App.3d 1299, 278 Cal.Rptr. 306 (1991)........................................................14

*Hokto Kinoko Co. v. Concord Farms*,
810 F. Supp. 2d 1013 (C.D. Cal. 2011) .........................................................................3

*Kahn v. Lischner*
128 Cal.App.2d 480, 275 P.2d 539 (1954) .................................................................12

*Langan v. United Services Automobile Association*,
69 F.Supp.3d 965 (N.D. Cal. 2014) ...........................................................................17

*Magpali v. Farmers Group, Inc.*
48 Cal.App.4th 471, 55 Cal.Rptr.2d 225 (1996)..........................................................9

*Marentes v. State Farm Mutual Automobile Insurance Company*,
224 F.Supp.3d 891, 920 (N.D. Cal. 2016) .......................................................9, 10, 12

ii

*Masters v. San Bernardino County Employees Retirement Assn.*
    32 Cal.App.4th 30, 37 Cal.Rptr.2d 860 (1995)...............................................19

*Mathis v. Pacific Gas and Elec. Co.*,
    75 F.3d 498 (9th Cir. 1996) ...........................................................................20

*Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).........................................................................................3

*Sabow v. U.S.*,
    93 F.3d 1445 (9th Cir. 1996) .........................................................................18

*Smith v. Moldonado*
    72 Cal.App.4th 637, 85 Cal.Rptr.2d 397 (1999).......................................5, 13

*Tenzer v. Superscope, Inc.*
    39 Cal.3d 18, 702 P.2d 212 Cal.Rptr. 130 (1985) ..........................................9

*Whitlock v. Pepsi Americas*,
    681 F.Supp.2d 1116 (N.D. Cal. 2010) ..........................................................18

*Yurick v. Superior Court*
    209 Cal.App.3d 1116, 257 Cal.Rptr. 665 (1989) ..........................................19

**Statutes**

15 USC §§ 1681n, 1681o....................................................................................8

Cal. Civ. Code § 45...........................................................................................14

Cal. Civ. Code § 46...........................................................................................14

Cal. Civ. Code § 1710.......................................................................................11

**Rules**

Fed. R. Civ. P. 56................................................................................................3

Fed. R. Civ. P. 56(a) ...........................................................................................3

**Other Authorities**

5 Bernard E. Witkin, *Summary of California Law* §772 (10th ed. 2005)....................11, 12

5 Bernard E. Witkin, *Summary of California Law* §773 (10th ed. 2005)..........................11

5 Bernard E. Witkin, *Summary of California Law* §779 (10th ed. 2005)..........................11

5 Bernard E. Witkin, *Summary of California Law* §807 (10th ed. 2005)......................5, 13

1

Restatement (Second) of Torts §§ 558, 559......................................................................5, 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiff's complaint asserts six causes of action: 1) Fraud in the Inducement, 2) Fraud, 3) Defamation, 4) Damage to Plaintiff's Credit Rating, 5) Intentional Infliction of Emotional Distress, and 6) that "Defendant's false claims and conclusions placed Plaintiff's conduct in a false light." Complaint, Dkt. 1. Plaintiff cannot meet his burden of proving the facts necessary to sustain any of these causes of action. Plaintiff himself admits that he has suffered no pecuniary harm as a result of American Express Company's ("Defendant" or "AEC") actions. Plaintiff further admits that he does not know and has not investigated whether AEC took *any* actions regarding his Platinum American Express charge card, whether AEC's actions have harmed his credit rating, or whether AEC has ever published intentionally harmful or negative information about Plaintiff at all. Indeed, Plaintiff has conceded that *he does not even know what a credit rating is*. In short, Plaintiff's claims all fail because Plaintiff cannot prove damages.

In addition, Plaintiff cannot carry his burden in any cause of action for reasons peculiar to each. One of Plaintiff's causes of action—"damage to credit rating"— is not an independent cause of action under California or federal law. Plaintiff also concedes that AEC did not make any factual misrepresentations to him, eliminating any dispute about the first essential element of his fraud in the inducement and fraud causes of action. Finally, the evidence is clear that AEC did not publish any defamatory information about Plaintiff to any person or entity, nor that its conduct was so outrageous that it represented an intentional attempt to inflict emotional distress.

In addition to the above, Plaintiff has not even sued the correct entity. AEC is an international holding company. It took no part in any of the actions Plaintiff alleges gave rise to his claims. It did not issue the Platinum charge card, it does not manage Plaintiff's charge card account, and it does not manage Plaintiff's Membership Rewards Program account. These actions were all conducted by or on behalf of American Express Centurion Bank ("AECB"). AEC therefore respectfully asks this Court to grant summary judgment in its favor.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FACTUAL BACKGROUND

Sometime before May 2016, Plaintiff became aware of a promotion which offered 100,000 Membership Rewards points to individuals who opened a new Platinum charge card and spent $3,000.00 within the first three months of opening the card. Complaint; Dkt 1 at p. 3 ¶ 9. Plaintiff applied for and obtained a Platinum charge card with account number ending in 9-31001 in May, 2016. *Id.* Within the first three months of obtaining the Platinum charge card, Plaintiff used it to buy six $500 Visa gift cards from Napa Premium Outlets Simon Properties Mall. Excerpts of Transcript of Deposition of Kenneth Barker ("Depo Transcript"), attached as Ex. A to the Declaration of Reade A. Bramer ("Bramer Decl.") at 85:18-86:6; Simon Properties receipts ("Receipts"), deposition exhibit 5. Plaintiff also charged $694.12 on miscellaneous other times for a total of $3,694.12 in charges on the Platinum charge card. Complaint, Dkt. 1 at p. 3, ¶ 9. Because Plaintiff spent $3,000 the first three months of having the Platinum charge card, he was awarded 100,000 Membership Rewards Points.

The American Express Membership Rewards Terms and Conditions, which apply to all participants in the Membership Rewards Program, restricts which purchases can be used to obtain Membership Rewards Points. (See Membership Rewards Terms and Conditions ("MR Terms") attached as Ex. B to Bramer Decl.) These terms and conditions state that "The following transactions aren't eligible purchases and you won't earn points for them:…Purchases and loads of reloadable prepaid cards." The terms and conditions of the Welcome Bonus offer which Plaintiff attempted to take advantage of are even more restrictive. (Welcome Bonus Terms and Conditions ("Welcome Bonus Terms") attached as Ex. A to Declaration of Alejandro Rodriguez ("Rodriguez Decl.").) These terms lay out the Welcome Bonus, stating that "100,000 Membership Rewards points will be credited to your account after you charge a total of $3,000 (the 'Threshold Amount') or more on your Platinum Card…within the first 3 months of Platinum Card Membership." *Id.* However, they also state that "[t]he following charges do NOT count towards the Threshold Amount:…purchases or reloading of prepaid cards; or purchases of other cash equivalents." *Id.*

1     Upon review, and because Plaintiff spent the threshold amount for the Welcome Bonus by

2 purchasing prepaid gift cards that can be used as cash equivalents in violation of both the MR

3 Terms and the Welcome Bonus Terms, the 100,000 Membership Rewards Points were removed from

4 Plaintiff's account. AECB informed Plaintiff of this decision in a letter dated August 23, 2016.

5 Complaint, Dkt. 1 at Ex. 2; Depo Transcript at 113:4-11, Ex. 9. Plaintiff attempted to dispute this

6 decision in a letter dated September 9, 2016. Complaint, Dkt. 1 at Ex. 3. Plaintiff also made multiple

7 phone calls to certain people he believes represented AEC. Depo Transcript at 112:16-25. AECB

8 responded to Plaintiff's September 9, 2016 letter with a letter dated October 5, 2016 in which it

9 stated that the decision remained the same. Complaint, Dkt 1, Ex. 4

10                                    **ARGUMENT**

11     Federal Rule of Civil Procedure 56 permits a party to "move for summary judgment,

12 identifying each claim or defense…on which summary judgment is sought." Once a party so moves,

13 "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to

14 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

15 party moving for summary judgment has the initial burden of showing "the absence of a genuine

16 issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The adverse party then

17 must "go beyond the pleadings and … designate 'specific facts showing that there is a genuine issue

18 for trial.'" *Id.* at 324. An issue is "genuine" only if "a reasonable jury could return a verdict for the

19 nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "non-moving party

20 who has the burden of proof at trial must present enough evidence that a 'fair-minded jury could

21 return a verdict for [that party] on the evidence presented.'" *Hokto Kinoko Co. v. Concord Farms*,

22 810 F. Supp. 2d 1013, 1021 (C.D. Cal. 2011) (quoting *Anderson*, 477 U.S. at 255). If a reasonable

23 jury would not do so, summary judgment should be granted. *Id.*; *see also Matshushita Elec. Indus.*

24 *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Evidence that "is merely colorable ... or is

25 not significantly probative" does not defeat summary judgment. *Anderson*, 477 U.S. at 249.

26

27

28

**I.      Plaintiff Was Not Damaged By the Conduct Alleged.**

This Court should grant summary judgment in favor of Defendant because Plaintiff cannot prove he suffered any damages as a result of Defendant's conduct, an essential requirement for his causes of action.    Damage to his credit score is the basis for the damages element in five of Plaintiff's six causes of action. Depo Transcript at 65:9-25; 111:25-112:5; 146:10-148:1; 200:4-201:1. Plaintiff even bases his emotional distress on his assumption that AEC disseminated derogatory information to credit reporting agencies. Depo Transcript at 149:9-16. However, neither AEC nor any American Express related entity made any negative reports to credit reporting agencies concerning Plaintiff. Declaration of Brandon Egan ("Egan Decl."), ¶¶ 4-9. In fact, it is AEC and its affiliates' policy not to make reports regarding Membership Rewards to any credit reporting agency. *Id.* at ¶ 5. The reports to the credit reporting agencies have been nearly identical since Plaintiff opened the Platinum charge card, and all have shown that Plaintiff's account is in good standing. *Id.* at ¶ 4-9. AEC has done nothing to jeopardize or otherwise harm Plaintiff's credit rating or credit score.

Plaintiff also cannot prove that he suffered any harm. Plaintiff concedes that he cannot recall the last time he checked his credit score or what it was at the time he checked. Depo Transcript at 53:2-20. Indeed, he doesn't even know what a credit score is. *Id.* at 52:15-54:3. Plaintiff has also never tried to obtain his credit report, and is either unfamiliar or only vaguely familiar with the three largest credit reporting agencies who maintain those reports. Depo Transcript at 57:5-57:23. He does not even contend that such a report would demonstrate the facts necessary to prove his claimed damages. Depo Transcript at 58:12-20. Plaintiff cannot hope to prove that AEC damaged his credit score when he does not know what his credit score was prior to opening the Platinum charge card and refuses to obtain his credit report. Even if he did obtain such a report before filing this action, it would have contained no negative reports from AEC related to the Platinum charge card.

Plaintiff also cannot prove damages indirectly. His testimony demonstrates that since opening the Platinum charge card he has not even attempted to obtain any credit, let alone had any application for credit denied on the basis of a bad credit score. Depo Transcript at 63:9-64:22.

Indeed, Plaintiff's entire basis for claiming that AEC harmed him is that he has refrained from applying for credit. Depo Transcript at 200:4-201:1. Plaintiff's central argument is that AEC has prevented him from applying for any loans because he would have to disclose an accusation of credit card fraud, and that this would result in a denial of his application for credit. *Id.* at 146:10-148:1. Even assuming Plaintiff's position is true, Plaintiff has not yet suffered any damage because he has not actually been denied any loan or forced to accept unfavorable terms. His damages are therefore purely speculative. To the extent that his refraining from applying for a loan is a cognizable harm, it is one of his own creation.

Damages is an essential element of at least three of Plaintiff's pled causes of action: fraud in the inducement, fraud, and damage to credit rating. *See* CACI No. 1902, CACI; No. 1900. Plaintiff also contends that damage to his credit rating and/or dissemination of accusations of fraud constitutes harm under the final three causes of action: defamation, false light, and intentional infliction of emotional distress. Depo Transcript at 136:20-24; Depo Transcript at 149:9-16; *see also* 5 Bernard E. Witkin, *Summary of California Law* §807, (10th ed. 2005) (citing Cal. Civ. Code §§ 45, 46; Restatement (Second) of Torts §§ 558, 559; *Smith v. Moldonado* 72 Cal.App.4th 637, 645, 85 Cal.Rptr.2d 397, 402 (1999); CACI No. 1802; CACI No. 1600.

Because AEC has shown that no reports of any fraudulent activity were made to any third parties, each of Plaintiff's claims must fail for lack of harm and/or damages. Therefore summary judgment should be granted to AEC on every cause of action.

## II.   Plaintiff Cannot Show that AEC Took any Actions with Regards to his Platinum Charge Card

Even if Plaintiff could show a disputed material fact necessary to proceed under any of his causes of action, he cannot prove that AEC is liable for the alleged conduct. The simple fact is that AEC, as a bank holding company, is not responsible for any of the alleged conduct that forms the basis of this suit. Despite Plaintiff's belief otherwise, no evidence exists to suggest that AEC entered into an agreement with or serviced Plaintiff's Platinum charge card account or Membership Rewards

1    account. Instead, the record demonstrates that AECB is the entity largely responsible for the actions

2    Plaintiff alleges.

3          Plaintiff contends that AEC was the issuer of the Platinum charge card, and that it is the only

4    American Express entity with which he has a contract. Depo Transcript at 34:8-36:6. However,

5    Plaintiff does not have a copy of this contract. Depo Transcript at 37:8-14. In fact, Plaintiff concedes

6    that he does not possess any documentation that references "American Express Company." Depo

7    Transcript at 38:19-21. Furthermore, although Plaintiff contends that he spoke to AEC

8    representatives on the phone, he cannot recall whether those representatives told him they worked

9    for "American Express" or "American Express Company." Depo Transcript at 61:61:10-62:5.

10    Plaintiff testified "I can't recall if they just said American Express or American Express Company, it

11    wouldn't have made any difference to me. I didn't understand there was any distinction or

12    difference." *Id.* This same misguided logic applies to why he believes the August 23rd and October

13    5th letters came from AEC. Indeed, it appears Plaintiff's entire belief that AEC is the proper party to

14    this suit is based on his assumption that the term "American Express" always and only refers to

15    "American Express Company." In Plaintiff's own words "American Express and American Express

16    Company, to my mind, are the same thing," Depo Transcript at 38:5-18. Ironically, despite

17    Plaintiff's stubbornness with regards to the proper entity up until this point, Plaintiff now claims that

18    distinguishing between "American Express" and "American Express Company" is "splitting hairs."

19    Depo Transcript 41:24-42:5. In fact, notwithstanding that his Card Member Agreement clearly

20    shows that he entered into an agreement with AECB, Plaintiff now contends that "American

21    Express" may be a separate entity, and can't recall whether he opened an account with "American

22    Express" or AEC. Depo Transcript at 47:21-49:15. In his words "American Express or American

23    Express Company, I don't differentiate between the two. And when I opened the account, it was

24    incidental whether it was American Express or American Express Company." Depo Transcript at

25    110:5-11.

26          Plaintiff's confusion demonstrates the total lack of any evidence that AEC was responsible

27    for any of the complained of conduct. Plaintiff concedes that he must have agreed to certain terms

28

1    when applying for the Platinum charge card, but does not recall what they were or even what that

2    application contained. Depo Transcript at 45:4-46:1; 79:16-80:4. Plaintiff has no evidence that AEC

3    manages the Membership Rewards program, except that he "think[s] it's just assumed." Depo

4    Transcript at 95:1-5. Plaintiff concedes that the August 23rd letter, which contains the allegedly

5    fraudulent and defamatory statements that are the subject of this suit, came from American Express

6    Account Services, not AEC. Depo Transcript at 114:20-23. Moreover, he concedes that neither the

7    August 23rd or October 5th letters even contain any reference to AEC. Depo Transcript at 112:16-

8    25; 114:11-19; 116:1-9; 118:6-15; 119:17-120:9. As Plaintiff himself concedes with regards to the

9    October 5th letter, he has no evidence to suggest that that it came from AEC and "just presumed it

10   did." Depo Transcript at 120:2-6. In short, Plaintiff has presented no evidence, and claims to have

11   no evidence other than his own presumptions, that AEC made the representations contained in the

12   August 23rd and October 5th letters, employed the people Plaintiff spoke to on the phone,

13   administered his Membership Rewards Program account, made any reports to credit reporting

14   agencies, or issued the Platinum charge card.

15         By contrast, AEC has produced evidence showing that it was not involved in any of the

16   complained of actions. AEC previously submitted a declaration by custodian of records Keith Herr,

17   authenticating the cardmember agreement between AECB and Plaintiff. Exhibit A to Declaration of

18   Keith C. Herr, attached as Exhibit C to Bramer Decl. This is the only written contract produced by

19   either party, and clearly shows that AECB issued and managed the Platinum charge card account

20   belonging to Kenneth Barker with account number ending in 9-31001. *Id.* In addition, three other

21   individuals from American Express affiliates have declared under penalty of perjury that Plaintiff's

22   charge card was issued by AECB. Egan Decl. at ¶ 2; Presti Decl. at ¶ 2; Rodriguez Decl., ¶ 2.

23         The record reflects that Plaintiff has no evidence beyond his unilateral belief that AEC was

24   involved in any way with the complained of conduct. In contrast, AEC has provided substantial

25   written and declaratory evidence that it has no relationship to this conduct. Therefore there is no

26   disputed material fact regarding whether AEC is the correct entity. Accordingly, this Court should

27   enter summary judgment in favor of AEC on all causes of action.

28

**III.     Cause of Action Four is not an Independent Cause of Action**

Plaintiff alleges six causes of action, but only five are recognized as independent causes of action under California law. Plaintiff's Fourth Cause of Action, damage to Plaintiff's credit rating, confuses damages with an independent cause of action. Plaintiff cannot seek recovery for damage to his credit rating without an accompanying actionable wrong. A liberal reading of Plaintiff's pleading would read this alleged cause of action as an element of the damages Plaintiff alleges under his other causes of action.

Damage to credit rating is also not actionable, in and of itself, under federal law. Under both California and Federal law, a Plaintiff must demonstrate that a credit report is inaccurate to even seek remedy under either the California Consumer Credit Reporting Agencies Act ("CCCRAA") or the Fair Credit Reporting Act ("FCRA").  *See Carvalho v. Equifax Information Services, LLC* 629 F.3d 876 (9th Cir. 2010) (finding California Consumer Credit Reporting Agencies Act preempted by Fair Credit Reporting Act, and that Fair Credit Reporting Act requires proof that reports made to credit reporting agencies were inaccurate, not simply proof of damage to credit). It is not enough to allege that a party's credit was damaged. Even then, the cause of action is for violation of the provisions of the FCRA or CCCRAA, including failure to conduct proper reinvestigation of the report, not strictly for damaging a Plaintiff's credit rating. *See Id; see also* 15 USC §§ 1681n, 1681o. Plaintiff alleges no such violation.

Moreover, even if Plaintiff now attempts to allege some violation of the FCRA or CCCRAA, as discussed above Plaintiff can produce no evidence that any derogatory or inaccurate report was made to any credit reporting agency.

Therefore, this Court should grant judgment in favor of AEC with regards to Cause of Action Four, Plaintiff's cause of action for damage to his credit rating.

1
2
3

**IV.     AEC is entitled to Summary Judgment in its Favor on Plaintiff's Fraud Claims Because Plaintiff Cannot show Intent, and Cannot have Justifiably Relied on any Alleged False Representations**

4
5
6
7
8

Plaintiff alleges two causes of action for fraud. The first fails because Plaintiff concedes that AEC did not have the requisite intent to support his claim. The second fails because the claimed misrepresentation was not false, was not a misrepresentation of fact, was not intended to induce reliance, and could not have induced such reliance given that Plaintiff believed the statement was false.

9

**A.     Plaintiff concedes AEC did not Intend to Break its Promise**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiff's first fraud cause of action, fraud in the inducement, is a "promissory fraud." "'Promissory fraud" is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Engalla v. Permanente Medical Group, Inc.* 15 Cal.4th 951, 973-974, 938 P.2d 903, 917, 64 Cal.Rptr.2d 843, 857 (1997) (internal citations omitted). Therefore "[a]n action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract,'" by way of a fraudulent promise. *Id.* "[I]n order to support a claim of fraud based upon the alleged failure to perform a promise, it must be shown that the promisor did not intend to perform at the time the promise was made." *Conrad v. Bank of America* 45 Cal.App.4th 133, 157, 53 Cal.Rptr.2d 336, 351 (1996) (citing *Tenzer v. Superscope, Inc.* 39 Cal.3d 18, 30, 702 P.2d 212, 219, 216 Cal.Rptr. 130, 136-137 (1985)). In addition, "'something more than nonperformance is required to prove the defendant's intent not to perform his promise.'...[I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury.'" *Magpali v. Farmers Group, Inc.* 48 Cal.App.4th 471, 481, 55 Cal.Rptr.2d 225, 231 (1996) (quoting *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30, 216 Cal.Rptr. 130, 702 P.2d 212 (1985)) (internal citations omitted); *Marentes v. State Farm Mutual Automobile Insurance Company*, 224 F.Supp.3d 891, 920 (N.D. Cal. 2016).

27
28

Plaintiff contends that the Welcome Bonus offer was the representation that induced him to open the Platinum charge card account. Depo Transcript at 107:1-4. However, Plaintiff concedes that there was nothing false in this statement. Depo Transcript at 108:10-109:6. Moreover, Plaintiff implicitly concedes that AEC did not have the intent to renege on this promise at the time it was made. Plaintiff specifically testified: "I don't believe there was anything false in that. It was the interpretation of it, the way it was handled....the issue should have been, 'We just don't like what you've done.' And we don't call it fraud." *Id.* Plaintiff further testified that that AEC and its affiliated entities did, in fact, give him the promised 100,000 points. As Plaintiff concedes "I was given the points, 100,000. And that was no—nothing to worry about. It just happened, and that was the way it was. It was the letters later that somebody in the organization determined that my purchase of gift cards was fraud." Depo Transcript at 109:10-23. Thus, Plaintiff's fraud theory is not sustainable based on the purportedly false representation that points would be awarded because that representation was not false. Plaintiff *did receive* 100,000 points. Moreover, even assuming AEC or its affiliates incorrectly removed 100,000 Membership Rewards points after he opened the card, Plaintiff cannot meet his burden to prove that AEC intended to do so when it issued the Welcome Bonus offer. As Plaintiff himself states "[t]he promotional offer was fine." Depo Transcript at 124:8-9.

Furthermore, even assuming, *arguendo*, that Plaintiff was improperly induced by an intentionally fraudulent promise to open the Platinum charge card account, Plaintiff concedes that he has suffered no damages for this alleged fraudulent inducement. When asked "do you contend that opening the credit card account harmed you?" Plaintiff responded "[o]pened [sic] the account didn't." Depo Transcript at 110:25-1114. Thus Plaintiff concedes, once again, that even if his cause of action is appropriate, he has suffered no damages.

**B.    Plaintiff Cannot Reasonably Rely on a Representation he Believed was False**

With regards to Plaintiff's other fraud claim, the elements are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Marentes v. State*

1    *Farm Mutual Automobile Insurance Company*, 224 F.Supp.3d at 920; *see also* 5 Bernard E. Witkin,

2    *Summary of California Law* §772, (10th ed. 2005).

3           Plaintiff contends that the fraudulent representations that form the basis of this claim are the

4    alleged accusations of fraud contained in the August 23 letter, October 5 letter and representations

5    made during "telephone calls." Depo Transcript at 124:16-24. In particular, Plaintiff claims that the

6    actionable false representation was that "[t]he innocent purchase of gift cards constitutes fraud or an

7    inappropriate use of the [charge] card." Depo Transcript at 112:12-15.

8           This representation cannot support a claim for fraud or fraud in the inducement. An alleged

9    fraudulent misrepresentation must ordinarily be an affirmation of *fact*. 5 Bernard E. Witkin,

10   *Summary of California Law* §773, (10th ed. 2005); *See also* Cal. Civ. Code § 1710. The August 23,

11   2016 letter states that "[w]e recently noticed point accrual and redemption activity on your

12   Membership Rewards program account that indicates an effort to obtain and use points in a manner

13   that is not appropriate." Complaint, Dkt. 1 at Ex. 2; Depo Transcript at 113:4-11, Ex. 9. This is not a

14   false representation about a material fact. It is a statement of opinion, informing Plaintiff that AECB

15   had reason to believe Plaintiff had attempted to obtain Membership Rewards Points in a way that is

16   not permitted.

17          Indeed, even Plaintiff concedes that the statement is not a representation of fact. Instead,

18   Plaintiff repeatedly contends that this allegation was a statement regarding the law. For instance,

19   Plaintiff states that he believes this statement was "indisputable evidence that I've been found guilty

20   by their standards," and when asked to clarify stated "the definition of fraud means intent…if you

21   use that word 'fraud,' there's an intent. They are saying there's intent on my part to commit fraud."

22   Depo Transcript at 120:24-121:16. Plaintiff frequently references that he believes these

23   representations were false because they were an unsupported *legal opinion* accusing him of either

24   the crime or tort of fraud. Depo Transcript 49:13-25; 93:8-18; 106:11-23; 108:10-109:6; 184:15-

25   185:3 (emphasis added). Thus, according to Plaintiff's own understanding this was a representation

26   of law, not fact. Representations about the law are generally treated the same as representations of

27   opinion. 5 Bernard E. Witkin, *Summary of California Law* §779, (10th ed. 2005) (citing Restatement

28

1    (Second) of Torts § 545). "Representations of opinion are ordinarily not actionable." *Id.* at §774.

2    Thus, under Plaintiff's own interpretation of this representation, it is a representation of legal opinion

3    and therefore not actionable.

4         Even if the statement is a misrepresentation of fact, or contains misrepresentations of fact,

5    Plaintiff has not and cannot show that AEC had knowledge of the statement's falsity, that there was

6    intent to induce reliance, that he actually did rely, or that he was damaged in any way. *See Marentes*

7    *v. State Farm Mutual Automobile Insurance Company*, 224 F.Supp.3d at 920; *see also* 5 Bernard E.

8    Witkin, *Summary of California Law* §772, (10th ed. 2005). This alleged accusation of fraud came

9    after Plaintiff had already opened the Platinum charge card account, and only served as notification

10   that AECB would be removing 100,000 Membership Rewards Points from Plaintiff's Membership

11   Rewards Program account. This statement could not have been intended to induce any action in

12   Plaintiff, and indeed Plaintiff does not contend that he actually undertook any action on the basis of

13   this representation other than to contest it. Plaintiff's last purchase using the Platinum charge card

14   was in June, 2016, two months before receiving the letter. Depo Transcript at 31:17-32:10. He has

15   not closed the Platinum charge card account. Depo Transcript at 31:17-33:24. None of Plaintiff's

16   actions or inactions with regards to the Platinum charge card can be attributed to this representation.

17        Plaintiff cannot claim that his refusal to apply for credit was reasonable reliance. With

18   regards to fraud "[t]he test is not only whether the party acted in reliance upon a misrepresentation,

19   but whether he was justified in his reliance." *Kahn v. Lischner* 128 Cal.App.2d 480, 489, 275 P.2d

20   539, 544 (1954). Plaintiff cannot possibly claim that he justifiably relied on this statement. Plaintiff

21   made clear through his dispute of the August 23 letter that he believed the representation was false

22   from the start saying "[a]fter I got this letter…I spent some time trying to resolve the issue. And then

23   I wrote a letter, certified letter, saying, you know, this is all wrong, fix it." Depo Transcript at 60:15-

24   25. If Plaintiff believed from the moment he received these letters that the statements were false, any

25   reliance he placed in them is completely unjustifiable.

26        Finally, even if refraining from applying for a loan was reasonable, justifiable reliance,

27   Plaintiff cannot show that these representations were made with the intent of inducing that exact

28

action. In order to sustain a cause of action for fraud, Plaintiff must show "that the defendant intended to induce the particular action that took place, or conduct in substantially the same transaction. It is not considered enough that defendant should have realized the likelihood of the plaintiff's action, for the law of deceit…does not impose liability for unintended consequences." 5 Bernard E. Witkin, *Summary of California Law* §807, (10th ed. 2005) (citing *Conrad*, 45 Cal.App.4th at 157). The "false" representations that are the basis of this fraud claim make no representation about Plaintiff's credit score, credit rating, or credit history. They do not make any representation about Plaintiff's ability to obtain credit, nor suggest that he must disclose this particular dispute in future credit applications. Therefore even if the representations in these letters were false, and Plaintiff did reasonably rely upon them to his detriment, Plaintiff cannot show that this representation, which contains no mention of Plaintiff's credit history, would induce Plaintiff to refrain from seeking any credit.

Therefore, no disputed material fact exists as to Plaintiff's fraud in the inducement or fraud causes of action and this Court should grant judgment in AEC's favor as to these causes of action.

**V.      Plaintiff Cannot Show any Publication Sufficient to Prove Defamation, False Light**

Plaintiff also asserts causes of action for defamation and "false light." These fail for the same reason all of Plaintiff's claims fail: there was no publication of false or defamatory information. These are essential elements of both Plaintiff's defamation claims and of Plaintiff's general damages.

The essential elements of defamation are "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." 5 Bernard E. Witkin, *Summary of California Law* §807, (10th ed. 2005) (citing Cal. Civ. Code §§ 45, 46; Restatement (Second) of Torts §§ 558, 559; *Smith v. Moldonado* 72 Cal.App.4th 637, 645, 85 Cal.Rptr.2d 397, 402 (1999). "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Smith v. Moldonado* 72 Cal.App.4th at 645, 85 Cal.Rptr.2d at 402. A written defamatory statement, also known as libel, is "a false and unprivileged publication…which exposes

any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Oral defamation, also known as slander, is "a false and unprivileged publication, orally uttered," that either charges a person with a crime, imputes the existence of a disease, injures a person with respect to their office, profession, trade or business, imputes a want of chastity, or naturally causes actual damages. Cal. Civ. Code § 46. Truth is a defense to any defamation claim, written or oral. "Truth is a complete defense to civil liability for defamation." *Gill v. Hughes,* 227 Cal.App.3d 1299, 1309, 278 Cal.Rptr. 306, 311 (1991). When considering truth as a defense, "the defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." *Campanelli v. Regents of University of California* 44 Cal.App.4th 572, 581-82, 51 Cal.Rptr.2d 891, 897 (1996). In addition "publications which are statements of opinion rather than fact cannot form the basis for a libel action." *Id.* at 578.

For the purpose of a Motion for Summary Judgment, a false light claim is treated in the same manner as a claim for defamation, and this Court should grant summary judgment in favor of Defendant for the same reasons stated herein. Indeed "[w]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers, Inc.* 74 Cal.App.4th 1359, 1385 n.13, 88 Cal.Rptr.2d 802, 823 n.13 (1999) (granting summary judgment for defendant on a false light claim for the same reasons as it granted summary judgment on defamation claims).

As a preliminary matter, it should be noted that Plaintiff is retired. Depo Transcript at 142:15-21. Therefore these defamatory statements cannot have harmed him in his occupation or profession.

Plaintiff contends that the defamatory statements that form the bases of these claims are the statements contained in the August 23rd letter and reinforced in the October 5th letter and in telephone conversations he alleges he made to AEC. Depo Transcript at 125:3-20. In particular, Plaintiff contends that the statement in the August 23rd letter that informed Plaintiff 100,000 points

would be removed from his Membership Rewards Program account was a defamatory statement. Depo Transcript at 133:6-11. Plaintiff contends that this defamatory statement was published when AEC decided to "disseminate this through the very large network of data centers." Depo Transcript at 1129:19-130:9.

Plaintiff's claim must fail. The text of the statement Plaintiff contends is defamatory reads "after careful review of your Membership Rewards account activity, we have removed points from you Membership Rewards program account." Complaint, Dkt. 1 at Ex. 2; Depo Transcript at 113:4-11, Ex. 9. This is neither a defamatory statement nor a false statement. This statement, on its own, does not expose Plaintiff to hatred, contempt, ridicule, or obloquy. Moreover, Plaintiff concedes that it was a true statement; 100,000 points were removed from his Membership Rewards Program Account. Depo Transcript at 130:25-131:21.

To the extent that Plaintiff claims he was slandered, he admits that he does not recall what the precise slanderous comments were and has no record of when they were made or who made them. He did not take contemporaneous notes during these phone calls, cannot remember exactly what was said, and does not know who said them. Depo Transcript at 58:21-61:17; 141:13-20; 145:10-14. He therefore has no evidence and can produce no evidence of this alleged slander.

To the extent that Plaintiff claims other statements contained in these letters constituted defamatory accusations, his claims still must fail. The August 23rd letter that Plaintiff contends contained defamatory statements reads: "[w]e recently noticed point accrual and redemption activity on your Membership Rewards program account that indicates an effort to obtain and use points in a manner that is not appropriate." Complaint, Dkt. 1 at Ex. 2; Depo Transcript at 113:4-11, Ex. 9. This is the sum total of the accusations leveled by this letter against Plaintiff. The only portion of the letter which mentions fraud is a quote from the Membership Rewards Program terms and conditions, which states that "[i]f you attempt to use or obtain points in a fraudulent way," the Membership Rewards Program may take certain actions. Complaint, Dkt. 1 at Ex. 2; Depo Transcript at 113:4-11, Ex. 9 This is not a particularized statement about Plaintiff, but a boilerplate recitation of the terms of the Membership Rewards Program. Moreover, even if you assume that it is an implied accusation, it

1   is not an accusation of fraud in any legal sense. Using or obtaining points "in a fraudulent way," is

2   not the same as committing out-and-out credit card fraud. Nowhere in the terms or in the August

3   23rd letter does AEC or its affiliates equate "fraudulent" Membership Rewards Program activity

4   with actionable credit card fraud.

5       In fact, this statement is defensible as either a statement of opinion or substantially justified

6   by truth. Plaintiff concedes that the Welcome Bonus Terms and Conditions applied to his use of the

7   Platinum charge card. Depo Transcript at 83:22-84:17; 128:24-129:4. As discussed above, these

8   terms exclude "purchases or reloading of prepaid cards; or purchases of other cash equivalents,"

9   from counting towards the Threshold Amount necessary to obtain 1000,000 Membership Rewards

10  Points. Plaintiff concedes that he bought $3,000 worth of Visa gift cards which could be used with

11  any merchant. Depo Transcript at 85:12-22; 101:13-15. AEC and its affiliates' position is that these

12  constituted both "prepaid cards" and "cash equivalents" under the terms of the Welcome Bonus.

13  Therefore, the August 23rd letter's statement that evidence indicates Plaintiff attempted to obtain or

14  use Membership Rewards Points in an inappropriate manner is at best a true statement and at worst a

15  statement of opinion regarding the interpretation of the relevant terms.

16      However, even assuming that the statements made in the August 23rd letter, October 5th

17  letter, and by unknown individuals via telephone are all false, defamatory statements about Plaintiff,

18  Plaintiff has not and cannot show that these statements were published or that he suffered any

19  damage as a consequence of these statements. As discussed above, Plaintiff has no evidence to

20  suggest that any accusation of fraud was made to any credit reporting agency, that his credit score

21  was harmed in any way, or that he has been denied credit on the basis of such an allegation.

22  Furthermore, Plaintiff does not contend that any report was made to any law enforcement agency.

23  Depo Transcript at 122:18-25.

24      Plaintiff's only contention that any allegedly defamatory statement was "published" is that he

25  believes it was disseminated to amorphous "data centers." Depo Transcript at 136:20-24. But

26  Plaintiff concedes he has no evidence that these data centers even exist other than his own testimony

27  and "common sense." Depo Transcript at 138:9-11. Nor can he offer any evidence other than his

28

1  belief that this information was shared with any third parties. Plaintiff states that other than his

2  testimony, his evidence that these statements were disseminated "over the internet" would be

3  contained in AEC's policies and procedures. Depo Transcript at 134:21-25. But exactly the opposite

4  is true; AEC's affiliates do not make reports regarding Membership Rewards Program accounts to

5  any third party. Egan Decl. at ¶ 5. More importantly, after careful review AEC has determined that

6  no report was made to any third party, law enforcement agencies or any governmental agencies,

7  concerning Plaintiff's Membership Rewards Program account. Rodriguez Decl. at ¶¶ 9-18 and Presti

8  Dec. ¶¶ 5-14. Plaintiff concedes he has no evidence other than his own testimony that it is his belief

9  that this information was shared with anyone other than AEC and its affiliates. Plaintiff concedes

10  that he has no records of any reports made to any credit reporting agency, and no record of any

11  letters AEC sent to anybody but Plaintiff containing defamatory statements. Depo Transcript at

12  145:15-146:1. This is because those reports do not exist. Rodriguez Decl. at ¶¶ 9-18.

13          Therefore, no disputed material fact exists as to Plaintiff's defamation or false light causes of

14  action. Accordingly, this Court should grant judgment in AEC's favor as to Plaintiff's defamation

15  and false light causes of action.

16  **VI.      Plaintiff Cannot Prove Intent or Outrageous Conduct**

17          Plaintiff's last cause of action is for intentional infliction of emotional distress ("IIED"). To

18  sustain a cause of action for IIED, Plaintiff must prove 1) that AEC's conduct was extreme and

19  outrageous, 2) that AEC intended to cause harm or acted with reckless disregard of the probability

20  that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct

21  occurred, 3) that Plaintiff suffered severe emotional distress, and 4) that AEC's conduct was an

22  actual and proximate cause of Plaintiff's severe emotional distress. *Langan v. United Services*

23  *Automobile Association*, 69 F.Supp.3d 965, 987 (N.D. Cal. 2014); CACI No. 1600.

24          Plaintiff testified that AEC intentionally inflicted emotional distress on him "[b]y falsely

25  determining or concluding that I had attempted to use a credit card in a fraudulent way, then

26  concluding I had used it in a fraudulent way, and then disseminating it through their entire network."

27  Depo Transcript at 149:9-16. Plaintiff contends that AEC's policies and procedures with regards to

28

AMERICAN EXPRESS COMPANY'S MOTION FOR SUMMARY JUDGMENT
3:16-CV-05647-WHA

suspected Membership Rewards Program activity caused him this distress. Depo Transcript at 151:5-11.

To begin with, Plaintiff concedes that AEC did not have the requisite intent to inflict emotional distress on him. Plaintiff's entire contention is that AEC has "a kangaroo-court system…of allowing someone to determine that an innocent purchase of gift cards constituted fraud." Depo Transcript at 150:12-15. Plaintiff is clear that he believes it is this system arising from AEC's policies and procedures which caused him harm. Depo Transcript at 150:25-151:4. Nevertheless, when asked to clarify whether he believes these policies and procedures were established with the intent of causing him harm, Plaintiff testified "I don't know about their intent. I know what the result is," and that he didn't know if these procedures were created specifically to harm him. Depo Transcript at 150:19-151:11.

When considering IIED "[i]t is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Whitlock v. Pepsi Americas*, 681 F.Supp.2d 1116, 1119-1120 (N.D. Cal. 2010) (quoting *Christensen v. Superior Court* 54 Cal.3d 868, 903, 830 P.2d 181, 202, 2 Cal.Rptr.2d 79, 100 (1991)) (internal quotation marks omitted); *see also Sabow v. U.S.*, 93 F.3d 1445, 1454-1455 (9th Cir. 1996). "The requirement that the defendant's conduct be directed primarily at the plaintiff is a factor which distinguishes IIED from the negligent infliction of such injury." *Christenson v. Superior Court,* 54 Cal.3d at 904. Plaintiff is clear that he believes that AEC's policies and procedures harmed him. However, when asked whether he contended these protocols were established specifically to harm him Plaintiff answered "I don't know specifically to harm me…there may be others that I don't know about," and later stated "I don't know about their intent." Depo Transcript at 150:19-151:11. Plaintiff thus concedes that he has no contention regarding AEC's intent in creating these policies and procedures, and all but concedes that these policies and procedures were not designed or directed primarily at him. Indeed, it would be difficult to allege that these policies and procedures could have been created with Plaintiff in mind when they explicitly apply to all Membership Rewards Program account holders.

1  Nor can Plaintiff cannot carry his burden as to the first element of IIED. Outrageous conduct
2  is defined as "conduct so extreme that it goes beyond all possible bounds of decency. Conduct is
3  outrageous if a reasonable person would regard the conduct as intolerable in a civilized community."
4  CACI No. 1601. Outrageous conduct specifically excludes "trivialities such as indignities,
5  annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure." *Id.* This is
6  a high bar. For instance, in *Yurick v. Superior Court* 209 Cal.App.3d 1116, 257 Cal.Rptr. 665
7  (1989), the appellate court reversed a trial court's decision denying motion for summary judgment
8  on an IIED claim. The claim was based on a superior in plaintiff's workplace calling them senile and
9  a liar. *Id.* at 1124. The court determined that defendant's "alleged conduct, while objectively
10 offensive and in breach of common standards of civility, was not so egregiously outside the realm of
11 civilized conduct as to give rise to actionable infliction of emotional distress." *Id.* at 1129.
12 Accordingly, the court found that this "completely negated an essential element of intentional
13 infliction of emotional distress," and that defendant was "entitled to summary adjudication as to that
14 cause of action." *Id.* at 1130.

15 It is also instructive to review *Masters v. San Bernardino County Employees Retirement*
16 *Assn.* 32 Cal.App.4th 30, 37 Cal.Rptr.2d 860 (1995). In that case, plaintiff argued that San
17 Bernardino County Employees Retirement Association failed to consider dispositive evidence in her
18 initial request for disability benefits, and intentionally inflicted emotional distress upon her by
19 requiring her to engage in an administrative hearing once it became aware of this evidence. *Id.* at 49.
20 The theory of liability was that given this new evidence, the Association should have summarily
21 reversed its decision rather than requiring plaintiff to undergo the cost and stress of a hearing. *Id.*
22 The court rejected this argument. "Allegations that an administrative agency did not summarily
23 reverse itself without hearing upon receipt of additional evidence, but instead held a regularly
24 authorized administrative hearing, simply does not amount to outrageous conduct." *Id.*

25 These cases demonstrate that outrageous conduct is a very high bar. In the first case, an
26 explicit accusation that another person was a liar and senile was not enough to constitute
27 "outrageous" conduct. And in the second, the normal operations of an entity, even when

28

19

1 demonstrably wrong and costly to plaintiff, did not constitute outrageous conduct. The same applies
2 here.

3    AEC did not engage in any outrageous conduct, in fact, AEC did not engage in *any* conduct
4 related to Plaintiff's charge card. The August 23rd and October 5th communications with Plaintiff
5 do not accuse him of a crime or civil wrong. They only state that he did not actually qualify for the
6 Welcome Bonus because he attempted to obtain that bonus in violation of the Welcome Bonus terms
7 and conditions. AEC did not threaten further civil or criminal action. AEC never reported this
8 information to any other entity, including law enforcement or government agencies. Declaration of
9 Linda Presti, ¶¶ 5-14 ("Presti Decl.). AEC and its affiliates' conduct was routine and unexceptional.
10 In no case was it outrageous.

11    Moreover, a person or entity is "privileged, in pursuing its own economic interests, to assert
12 in a permissible way its legal rights…in good faith…even though it [is] substantially certain that in
13 so doing emotional distress will be caused." *Mathis v. Pacific Gas and Elec. Co.*, 75 F.3d 498, 505
14 (9th Cir. 1996) (quoting *Fletcher v. Western National Life Ins. Co.* 10 Cal.App.3d 376, 395, 89
15 Cal.Rptr. 78, 89 (1970)) (internal quotation marks omitted). While it is still possible to communicate
16 these positions in an outrageous manner and thereby waive the protection of this privilege, Plaintiff
17 cannot reasonably argue that the August 23rd and October 5th letters, nor the representations made
18 in telephone calls he initiated, rose to the level of outrageous conduct. *See, e.g. Fletcher v. Western*
19 *National Life Ins. Co.* 10 Cal.App.3d 376, 395, 89 Cal.Rptr. 78, 89 (1970) (finding that insurance
20 company acted outrageously by ignoring multiple medical reports and knowingly falsely accusing
21 insured of misrepresentation in insurance application). As discussed above, both letters to Plaintiff
22 were based on a good faith understanding of the terms governing the Membership Rewards Program
23 and Welcome Bonus. Indeed, AEC continues to maintain that removal of Plaintiff's Membership
24 Rewards Points was justified. The letters communicating these positions do not constitute
25 outrageous conduct sufficient to move these communications out of this privilege.

26    Therefore, no disputed material fact exists as to Plaintiff's IIED cause of action.

27
28

**CONCLUSION**

Plaintiff cannot prevail here for a number of reasons. First, the undisputed record reflects that neither AEC nor its affiliated entities made any negative or derogatory report concerning Plaintiff to any credit reporting agency, law enforcement agency, government agency, or any other third party. Plaintiff thus has no damages. In addition, each of Plaintiff's causes of action is fatally flawed. Plaintiff cannot prevail on his fraud in the inducement cause of action because he concedes there was no intent to renege on the promise that induced him to open the Platinum charge card. He cannot prevail on his fraud cause of action because the alleged misrepresentation was not a misrepresentation of fact, nor was it intended to induce reliance, nor did he actually rely on the representation. Plaintiff's defamation and false light causes of action fail together because there is no evidence of publication. Finally, Plaintiff's IIED claim fails because Plaintiff concedes that AEC lacked the requisite intent, and in any case its conduct was privileged and far from outrageous.

Therefore, Summary judgment should be granted in AEC's favor as to all claims.


Dated:  July 21, 2017                              Respectfully submitted,

                                                   SHOOK, HARDY & BACON L.L.P.


                                                   By:_____/s/ Reade A. Bramer_____
                                                        READE A. BRAMER

                                                   Attorney for Defendant
                                                   AMERICAN EXPRESS COMPANY