IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KENNETH BARKER,

      Plaintiff,

v.

AMERICAN EXPRESS COMPANY,

      Defendant.

No. C 16-05647 WHA

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this pro se action arising out of an allegedly fraudulent credit card scheme, the corporate defendant moved for summary judgment. For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

Pro se plaintiff Kenneth Barker opened an American Express Platinum credit card account in May 2016. He signed up for this account based on the representation that he would receive one hundred thousand membership rewards program points if he spent three thousand dollars within three months of opening the account. Barker spent $3,694.12 in the three-month period, which purchases included $3,000.00 worth of gift cards, and the membership fee for the credit card. He paid this balance on schedule with no penalties and received the promised one hundred thousand points in July 2016 (Compl. ¶ 9; Exh. 1).

In August 2016, however, Barker received a letter from American Express Account Services notifying him that they were removing the one hundred thousand points after noticing "point accrual redemption activity on [Barker's] account that indicate[d] an effort to obtain and

use points in a manner that [was] not appropriate." The letter cited the membership rewards program's terms and conditions that stated (Compl. Exh. 2):

> [I]f you attempt to use or obtain points in a fraudulent way, we may:
>
> • Take away all points in your program account,
> • Cancel your program account, or
> • Cancel any of your American Express Cards

Barker attempted to resolve the matter over the phone soon after receiving the letter. In his phone conversation, he allegedly learned that American Express Company ("AEC") was unable to support its conclusions that he inappropriately and fraudulently accrued membership points.[*]

Barker alleges that AEC reported that he had committed credit card fraud to "industry wide credit bureaus" knowing these reports were false and damaging (Compl. ¶ 11). To support the allegation, Barker cites his account statement, which says (Compl., Exh. 1 at 3):

> **Credit Reporting**: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

Three days after receiving the August 2016 letter and following his fruitless phone conversation, Barker sent a claim letter to AEC's "Executive Offices" and "Secretary Office" (Compl., Exh. 3 at 1–2). He claimed the conclusions in the August 2016 letter were false, derogatory, and defamatory and demanded AEC (1) rescind, void, and cancel the August 2016 letter; (2) restore the removed points; (3) "expunge any record of alleged fraud, and the other hurtful and derogatory assertions that are set forth in the" August 2016 letter, his credit records, and all other records on which the information is recorded or stored; and (4) apologize to him in writing for the "arbitrary and capricious claims of fraud and malfeasance" (Compl., Exh. 3).

Barker did not receive a response before filing his complaint. He claims that AEC's fraudulent inducement, false conclusions, and "arrogant refusal" to respond to his claim letter caused him "grave emotional distress, and very severe turpitude, in the form of nervousness,

---

 \* Though Barker refers to the defendant as American Express throughout his complaint and later filings, he maintains that he is, in fact, referring to American Express Company ("AEC"), the named defendant in this action (*see* Dkt. No. 95-2 at 4–7).

2

anxiety, worry, indignity, insomnia, sleeplessness, and recurrence of kidney stones" (Compl. ¶ 13).

Barker filed this action in October 2016, alleging six claims for relief against AEC and its chief executive officer and chairman, Kenneth Chenault: (1) fraud in the inducement, (2) fraud, (3) defamation, (4) damage to plaintiff's credit rating, (5) intentional infliction of emotional distress, and (6) "defendant's false claims and conclusions place plaintiff's conduct in a false light." The third through sixth claims for relief are based on the allegedly false statements made in the August 2016 letter and claim damages in excess of one million dollars.

American Express Customer Care responded to Barker's claim letter from September 2016 on the same day he filed his complaint. Their response notified Barker that their decision remained the same (Dkt. 28, Exh. 3). Chenault moved to dismiss all of Barker's claims against him (Dkt. No. 22), which motion was granted (Dkt. No. 35).

Meanwhile, AEC answered Barker's complaint as "American Express Centurion Bank [("AECB")], incorrectly identified as American Express Company" (Dkt. No. 21). Defendant's subsequent discovery responses likewise substituted AECB for AEC (*see, e.g.,* Dkt. No. 42, Exhs. 1–3). The identity of the American Express entity Barker's grievances were directed toward thereafter became a focus of this litigation.

In April 2017, Barker filed a "motion to determine the status of defendant American Express Company and alleged defendant American Express Centurion Bank" in which he claimed that AEC, not AECB, issued his card and sent the letter accusing Barker of taking advantage of the points system (*id*. ¶ 4). In his motion, Barker requested an order requiring defendant to provide "documentary proof, which supports the claim that the correct defendant is [AECB] and not [AEC]." He further stated that if the proof "is valid, and satisfactory to this court, plaintiff will amend the Complaint to name [AECB] as defendant in this action" (*id.* ¶¶ 6–7).

In response, defendant provided the card member agreement between Barker and AECB, which, on the first page, identifies AECB as the issuer of Kenneth Barker's American Express platinum card (Dkt. 45-3 Exh. B at 2). Nevertheless, at a hearing on the matter, Barker

3

1 was not satisfied that this proved AECB was the correct defendant. An order invited defendant
2 to bring a formal motion to substitute AECB into this action (Dkt. No. 49), which it did (Dkt.
3 No. 52). Barker, however, opposed this substitution and AEC was unable to provide authority
4 permitting a defendant to unilaterally substitute itself for another defendant, and therefore
5 withdrew its motion (*see* Dkt. Nos. 55, 75). Pursuant to Barker's wishes, the action proceeded
6 with AEC as the sole remaining defendant (Dkt. Nos. 78, 79). The order denying as withdrawn
7 AEC's motion to substitute warned that "Plaintiff has chosen to sue American Express
8 Company and expressly and repeatedly refused to substitute American Express Centurion Bank.
9 If plaintiff cannot sustain his claim against American Express Company, then plaintiff will not
10 be allowed to amend his complaint to substitute in American Express Centurion Bank, having
11 spurned the offer to straighten out the pleadings" (Dkt. No. 79 at 1–2).

AEC now moves for summary judgment as to all of Barker's claims. Barker opposes. This order follows full briefing and oral argument.

**ANALYSIS**

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FRCP. 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. Once the moving party has made a threshold showing, the burden shifts to the nonmoving party to prove the existence of a triable issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In this analysis, all reasonable inferences must be drawn in the light most favorable to Barker. *See Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

**1.    NO DEALINGS BETWEEN BARKER AND AEC.**

Fatal to Barker's claims, he is unable to show that he entered into any contract with the named defendant, AEC, or otherwise had dealings with AEC outside of this litigation. AEC has provided documentation showing that Barker's credit card agreement was, in fact, with AECB. This includes a copy of the card member agreement between Barker and AECB, identifying AECB as the credit card issuer, as well as sworn declarations stating that AEC is a holding

4

company, and does not issue credit cards (Dkt. Nos. 94-4; 94-5; 94-2, Exh. C at 98). AEC has also provided a sworn declaration from its assistant custodian of records stating that AEC is not involved in the issuance or maintenance of platinum credit card accounts and did not "extend or clawback any membership rewards points, and did not communicate with Plaintiff regarding any of these actions" (Dkt. No. 52-2 at 2–3). According to the assistant custodian of record's declaration, the letters at issue in this action "were drafted, authorized and sent on behalf of AECB" (*Ibid.*).

Barker has failed to present any evidence showing that he entered into a contract with AEC. He has not provided the contract he ostensibly entered into with AEC, or, for that matter, any documentation containing any reference to AEC. Rather, he stands on the assertion that, in his opinion, there is no difference between American Express entities, and that documentation which uses the name "American Express" must be construed as coming from AEC (Dkt. No. 95-2 at 4–7). It is, undoubtedly, frustrating to try to determine which, among a number of similarly named corporations, one is dealing with in trying to resolve a claim; nevertheless, Barker is not at liberty to ignore corporate distinctions and hold liable whichever company he chooses. Here, all evidence shows that AECB, not AEC, is the corporation that issued Barker his platinum card, processed his transactions, and communicated with Barker regarding his card. Barker has not presented any evidence showing that AEC is liable for any alleged wrongdoing.

Nor can Barker claim to be surprised to discover that his contract was with AECB. Throughout this litigation, AEC has repeatedly informed Barker of this fact, including by providing him with a copy of his card member agreement over three months ago (Dkt. No. 45-3 Exh. B). AECB even attempted to substitute itself into the case, which effort Barker successfully overcame (*see* Dkt. Nos. 52, 55, 75, 78). He chose this route.

AEC has shown that it was not a party to the contract that Barker predicates his fraud claims upon, and did not issue the letters that Barker predicates his defamation, false light, and intentional infliction of emotional distress claims upon. This showing shifts the burden to

5

Barker to prove otherwise. *See Liberty Lobby, Inc.*, 477 U.S. at 248–49. He has not carried that burden. Accordingly, AEC's motion for summary judgment is **GRANTED**.

## CONCLUSION

For the foregoing reasons, AEC's motion for summary judgment is **GRANTED**. The action is **DISMISSED**. Judgment shall be entered in favor of American Express Company.

**IT IS SO ORDERED.**

Dated: September 7, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE